## IN THE UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| v. | : | CRIMINAL NOS. 25-8-2 & 25-537 |
| FRED BLAKLEY | : | |

### GUILTY PLEA AGREEMENT

Under Rule 11 of the Federal Rules of Criminal Procedure, the government, the defendant, and the defendant's counsel enter into the following guilty plea agreement. Any reference to the United States or the government in this agreement shall mean the Office of the United States Attorney for the Eastern District of Pennsylvania.

      1.     The defendant agrees to plead guilty to Counts One and Nine of the superseding indictment in Criminal Number 25-8 (the "superseding indictment"), charging him with conspiracy to commit mail and wire fraud, in violation of 18 U.S.C. § 1349, and conspiracy to defraud the United States and violate the Food, Drug, and Cosmetic Act, in violation of 18 U.S.C. § 371, and not to contest forfeiture as set forth in the notice of forfeiture charging criminal forfeiture under 18 U.S.C. §§ 981(a)(1)(C) and 982(a)(7), all arising from his involvement operating purported medical clinics where he touted false credentials and claimed to use machines with non-existent technology to diagnose and treat various diseases and his unauthorized sale and promotion of various products to treat diseases, including cancer.

      2.     The defendant additionally agrees to plead guilty to Count One of an information filed in Criminal Number 25-537 (the "information"), waiving venue and prosecution by indictment, charging him with being a felon in possession of a firearm, in violation of 18 U.S.C.

§ 922(g)(1), and not to contest forfeiture as set forth in the notice of forfeiture charging criminal

forfeiture under 18 U.S.C. § 924(d), all arising from his possession of various firearms on

January 22, 2025. The defendant further acknowledges his waiver of rights, as set forth in the

attachment to this agreement.

3.      With respect to the charge contained in the information, the defendant agrees to

waive any claim of lack of venue, and consents to prosecution in the Eastern District of

Pennsylvania for the conduct giving rise to the charge. The defendant further agrees to waive any

challenge that venue in the Eastern District of Pennsylvania is not proper, and will execute a

formal written waiver of venue at the time his guilty plea is entered.

4.      The defendant understands that the government will move to consolidate Criminal

Number 25-8 with Criminal Number 25-537 for sentencing as to this defendant only, and the

defendant agrees to join in that motion. If the Court does not grant the government's motion to

consolidate the cases, the defendant shall have the right to withdraw from this plea agreement.

5.      This agreement is conditioned upon the following: (a) defendant Mary Blakley

entering a guilty plea in 25-CR-8; and (b) acceptance of that plea by a United States District

Judge at the time of the guilty plea hearing. If defendant Mary Blakley does not satisfy these two

conditions, or subsequently seeks to withdraw her guilty plea, the United States Attorney's

Office, in its sole discretion, will be released from all its obligations under this agreement. In

addition, if defendant Mary Blakley breaches her plea agreement, the United States Attorney's

Office, in its sole discretion, may void this defendant's plea agreement.

6.      In the event that (a) the defendant's conviction is later vacated for any reason;

(b) the conviction of defendant Mary Blakley is later vacated for any reason; (c) the defendant

violates this agreement; (d) defendant Mary Blakley violates her plea agreement; (e) the

defendant's plea is later withdrawn; or (f) defendant Mary Blakley's plea is later withdrawn, the

defendant waives all defenses based on speedy trial and the statute of limitations, for 120 days

from any of these events.

       7.      The defendant understands, agrees, and has had explained to him by counsel that

the following statutory maximum sentences apply in this case: For Count One of the superseding

indictment, charging conspiracy to commit mail and wire fraud, a term of imprisonment of 20

years, a term of supervised release of 3 years, a fine of $250,000, and a special assessment of

$100. For Count Nine of the superseding indictment, charging conspiracy to defraud the United

States and violate the Food, Drug, and Cosmetic Act, a term of imprisonment of 5 years, a term

of supervised release of 3 years, a fine of $250,000, and a special assessment of $100. Four

Count One of the information, charging felon in possession of a firearm, a term of imprisonment

of 15 years, a term of supervised release of 3 years, a fine of $250,000, and a special assessment

of $100. The total permissible statutory maximum sentence is a term of imprisonment of 40

years, a term of supervised release of 3 years, a fine of $750,000, and a special assessment of

$300. Full restitution also shall be ordered. Forfeiture of any property, real or personal,

constituting or derived from, proceeds traceable to the violations of Counts One and Nine of the

superseding indictment and forfeiture of all firearms or ammunition involved in the violation of

Count One of the information also may be ordered. The defendant further understands that

supervised release may be revoked if its terms and conditions are violated. When supervised

release is revoked, the original term of imprisonment may be increased by up to 2 years on each

of Counts One and Nine of the superseding indictment and Count One of the information. Thus,

a violation of supervised release increases the possible period of incarceration and makes it

possible that the defendant will have to serve the original sentence, plus a substantial additional period, without credit for time already spent on supervised release.

8.   The government may:

a.      Move to dismiss Counts Two through Eight of the superseding indictment as to this defendant. The defendant waives the statute of limitations as to all counts to be dismissed under this agreement and agrees that if the defendant withdraws from, or successfully challenges, the guilty plea entered under this agreement, or if these counts are otherwise reinstated under the terms of this agreement, neither the statute of limitations nor the Double Jeopardy Clause will bar prosecution on any of these dismissed counts.

b.      Make whatever sentencing recommendation as to imprisonment, fines, forfeiture, restitution, and other matters which the government deems appropriate.

c.      Comment on the evidence and circumstances of the case; bring to the Court's attention all facts relevant to sentencing including evidence relating to dismissed counts, if any, and to the character and any criminal conduct of the defendant; address the Court regarding the nature and seriousness of the offense; respond factually to questions raised by the Court; correct factual inaccuracies in the presentence report or sentencing record; and rebut any statement of facts made by or on behalf of the defendant at sentencing.

d.      Nothing in this agreement shall limit the government in its comments in, and responses to, any post-sentencing matters.

9.   In order to facilitate the collection of the criminal monetary penalties to be imposed in connection with this prosecution, the defendant agrees fully to disclose all income, assets, liabilities, and financial interests, held directly or indirectly, whether held in his own

name or in the name of a relative, spouse, associate, another person, or entity, and whether held in this country or outside this country. Accordingly:

      a.     The defendant will submit a completed Financial Statement of Debtor to the U.S. Attorney's Office, in a form it provides and as it directs, within 14 days of execution of this plea agreement. The defendant promises that his financial statement and disclosures will be complete, accurate, and truthful.

      b.     The defendant expressly authorizes the U.S. Attorney's Office to obtain a credit report on him in order to evaluate the defendant's ability to satisfy any monetary penalty imposed by the Court.

      c.     Upon request by the United States, the defendant also agrees to submit to a financial deposition or interview prior to sentencing, and provide all documents within the defendant's possession or control as requested by the U.S. Attorney's Office regarding the defendant's financial resources and that of the defendant's household.

      d.     The defendant agrees not to transfer, assign, dispose, remove, conceal, pledge as collateral, waste, or destroy property with the effect of hindering, delaying, or defrauding the United States or victims. The defendant otherwise shall not devalue any property worth more than $1,000 before sentencing, without the prior approval of the United States.

      e.     The defendant also agrees to execute any documents necessary to release any funds held in any repository, bank, investment, other financial institution, or any other location in order to make partial or total payment toward any monetary penalty that the Court may impose.

      f.     If the defendant fails to comply with this paragraph of the plea agreement or if any of the defendant's representations pursuant to the requirements set forth in this

paragraph are false or inaccurate, the government may elect to: void this agreement; and/or argue that the defendant is not entitled to a downward adjustment for acceptance of responsibility under Guideline Section 3E1.1. The government may also elect to: void the forfeiture portion of the agreement and try the forfeiture before the Court and seek a larger forfeiture; and/or pursue any and all forfeiture remedies available at law or equity. The defendant agrees to waive any right to a trial by jury on all forfeiture issues, and to waive any claim at trial based on any statute of limitations.

10.     The defendant agrees to pay a fine and restitution as ordered by the Court. The defendant agrees that any restitution or fine imposed by the Court shall be due and payable immediately and on such terms and conditions that the Court may impose. In the event the Court imposes a schedule for the payment of restitution or fine, the defendant understands and agrees that such a schedule represents a minimum payment obligation and does not preclude the United States Attorney's Office from pursuing any other means by which to satisfy the defendant's full and immediately enforceable financial obligation under applicable federal and/or state law.

11.     The defendant agrees that forfeiture, restitution, fine, assessment, tax, interest, or other payments in this case do not constitute extraordinary acceptance of responsibility or provide any basis to seek a variance from the applicable Sentencing Guideline range.

12.     The defendant agrees to pay the special victims/witness assessment in the amount of $300 before the time of sentencing and shall provide a receipt from the Clerk to the government before sentencing as proof of this payment.

13.     The parties agree to the following with respect to the forfeiture of assets:

a.     The defendant agrees to forfeit his right, title, and interest in the sum of $2,036,736, which represents the proceeds that he obtained from the offenses of conspiracy to

commit wire fraud and mail fraud and conspiracy to defraud the United States and violate the

Food, Drug, and Cosmetic Act, charged in Counts One and Nine of the superseding indictment,

and agrees to the entry of a money judgment against him in this amount. The defendant

understands that the government will also seek a forfeiture money judgment in the amount of

$2,036,736 against defendant Mary Blakley, however, any recovery from either defendant will

serve as an offset against the forfeiture money judgment amount of their co-defendant. The

defendant agrees that, due to the defendant's acts or omissions, these proceeds are not currently

available to the government for forfeiture, that the conditions of 21 U.S.C. § 853(p)(1)(A)-(E)

have been met, and that the government is entitled to the forfeiture of substitute assets because

one or more of the conditions in 21 U.S.C. § 853(p) have been met.

      b.      The defendant agrees to the entry of a preliminary order of forfeiture

pursuant to Federal Rule of Criminal Procedure 32.2(b) as soon as possible after the guilty plea

and before sentencing. Pursuant to Rule 32.2(b)(4), the defendant further agrees that, upon the

request of the government, the preliminary order of forfeiture may be made final before his

sentencing. The defendant waives all statutory deadlines, including but not limited to deadlines

set forth in 18 U.S.C. § 983.

      c.      The defendant acknowledges that forfeiture is part of the sentence that

may be imposed in this case and waives any failure by the Court to advise defendant of this,

pursuant to Federal Rule of Criminal Procedure 11(b)(1)(J), at the time the Court accepts

defendant's guilty plea. The defendant further waives the requirements of Rules 32.2 and 43(a)

of the Federal Rules of Criminal Procedure regarding notice of the forfeiture in the charging

instrument, announcement of the forfeiture at sentencing, and incorporation of the forfeiture in

the judgment.

d.     The defendant agrees to waive any and all constitutional, statutory, and other challenges to the forfeiture on any and all grounds, including any claims, defenses, or challenges arising under the Double Jeopardy or Excessive Fines Clauses of the Eighth Amendment, resulting from any forfeiture imposed in this case and/or any pending or completed administrative or civil forfeiture actions, and stipulates that such forfeiture is not grossly disproportionate to his criminal conduct.

14.     The parties agree to the following with respect to forfeiture of assets:

a.     The defendant agrees that, based on the defendant's conviction for his offenses of conspiracy to commit wire fraud and mail fraud and conspiracy to defraud the United States and violate the Food, Drug, and Cosmetic Act, charged in Counts One and Nine of the superseding indictment, he forfeits his right, title, and interest in the assets listed in Attachment B-1, that such assets constitute or are derived from proceeds that the defendant obtained from the offenses in the superseding indictment and are subject to forfeiture under 18 U.S.C. §§ 981(a)(1)(C) and 982(a)(7), and that such assets are forfeitable to the United States in any judicial (criminal and civil) and administrative proceeding(s) at the government's exclusive discretion, and without further notice to the defendant.

b.     The defendant agrees that, based on the defendant's conviction for his offense of felon in possession of a firearm, charged in Count One of the information, he forfeits his right, title, and interest in the assets listed in Attachment B-2, that such assets constitute firearms or ammunition involved in the offense charged in the information and are subject forfeiture under 18 U.S.C. § 924(d)(1), and that such assets are forfeitable to the United States in any judicial (criminal and civil) and administrative proceeding(s) at the government's exclusive discretion, and without further notice to the defendant.

- 8 -

c.      The defendant agrees to the entry of a preliminary order of forfeiture

pursuant to Federal Rule of Criminal Procedure 32.2(b) as soon as possible after the guilty plea

and before sentencing. Pursuant to Rule 32.2(b)(4), the defendant further agrees that, upon the

request of the government, the preliminary order of forfeiture may be made final before his

sentencing. The defendant waives all statutory deadlines, including but not limited to deadlines

set forth in 18 U.S.C. § 983.

d.      The defendant acknowledges that forfeiture is part of the sentence that

may be imposed in this case and waives any failure by the Court to advise defendant of this,

pursuant to Federal Rule of Criminal Procedure 11(b)(1)(J), at the time the Court accepts

defendant's guilty plea. The defendant further waives the requirements of Rules 32.2 and 43(a)

of the Federal Rules of Criminal Procedure regarding notice of the forfeiture in the charging

instrument, announcement of the forfeiture at sentencing, and incorporation of the forfeiture in

the judgment.

e.      The defendant agrees to waive any and all constitutional, statutory, and

other challenges to the forfeiture on any and all grounds, including any claims, defenses, or

challenges arising under the Double Jeopardy or Excessive Fines Clauses of the Eighth

Amendment, resulting from any forfeiture imposed in this case and/or any pending or completed

administrative or civil forfeiture actions, and stipulates that such forfeiture is not grossly

disproportionate to his criminal conduct.

f.      The defendant agrees to take all necessary action to pass clear title of the

assets listed in Attachments B-1 and B-2 to the United States, including, but not limited to,

completing any documents required to transfer title of these assets to the United States. The

defendant also agrees to take all necessary action to ensure that the assets listed in Attachments

B-1 and B-2 are not sold, disbursed, wasted, hidden, or otherwise made unavailable for forfeiture.

        g.     The defendant consents to the interlocutory sale of any or all of the assets upon motion of the government, following the entry of a preliminary order of forfeiture.

        h.     The defendant agrees that he will not file, or assist any other party in filing, a claim or petition asserting an interest in or otherwise contesting the forfeiture of any of the assets listed in Attachments B-1 or B-2.

        i.     In the event that a successful claim is made by a third party to any of the assets listed in Attachments B-1 or B-2, the defendant agrees to forfeit substitute assets equal in value to those assets awarded to that third party.

        j.     The defendant agrees, with respect to any real property to be forfeited, that the government may file a lis pendens on the real property; the government shall have access to the real property for the purposes of inspection, appraisal, and testing; and the defendant will take all actions and execute all documents requested by the government to effectuate the government's access to the real property.

        k.     The defendant acknowledges that the net proceeds from the liquidation of the specific property forfeited in case 25-CR-8, including but not limited to those items identified in Attachment B-1, shall be applied to the defendant's forfeiture money judgment.

        l.     The defendant acknowledges that he has been informed of his right to file a claim for the property listed in Attachment C-1, according to 41 C.F.R. 128-48.102-1. The defendant hereby knowingly and voluntarily waives any right, title, and interest in the property and agrees not to contest the vesting of the title in the United States Government; agrees to execute all documents requested by the government to effectuate his abandonment; and agrees

that the Federal Bureau of Investigation may dispose of the property in whatever manner it deems appropriate.

  m. The defendant abandons any right, title, and interest that he may have in the firearms and ammunition listed in Attachment C-2; agrees to execute all documents requested by the government to effectuate his abandonment; and agrees that the Federal Bureau of Investigation may dispose of the firearms and ammunition in accordance with the law.

  15. The defendant may not withdraw his plea because the Court declines to follow any recommendation, motion, or stipulation by the parties to this agreement. No one has promised or guaranteed to the defendant what sentence the Court will impose.

  16. Pursuant to USSG § 6B1.4, the parties enter into the following stipulations under the Sentencing Guidelines Manual. It is understood and agreed that: (1) the parties are free to argue (except as stated below) the applicability of any other provision of the Sentencing Guidelines, including offense conduct, offense characteristics, criminal history, and adjustments; (2) these stipulations are not binding upon either the Probation Office or the Court; and (3) the Court may make factual and legal determinations that differ from these stipulations and that may result in an increase or decrease in the Sentencing Guidelines range and the sentence that may be imposed:

  a. With regard to the charges contained in the superseding indictment:

    1. The parties agree and stipulate that under USSG § 2B1.1(a)(1), the base offense level for the defendant's conduct is 7; under USSG § 2B1.1(b)(1)(I), the actual fraud loss caused in furtherance of the criminal activity jointly undertaken by the defendant and his co-conspirators for which the defendant is responsible was between

$1,500,000 and $3,500,000, that is, $2,036,736; this amount was within the scope of the defendant's agreements; this amount was reasonably foreseeable to the defendant in connection with the agreements; and the defendant's Guideline range should be calculated based on this amount pursuant to USSG § 1B1.3, increasing the base offense level by 16 levels.

   2. The parties agree and stipulate that the government will not seek an increase in the guidelines based on an aggravating role, pursuant to USSG § 3B1.1, and that the defense may seek a decrease in the guidelines based on a mitigating role, pursuant to USSG § 3B1.2.

   b.   With regard to the charge included in the information:

   1. The parties agree and stipulate that the base offense level is 20 because the offense involved a firearm described in 26 U.S.C. § 5845(a), specifically a silencer, and the defendant was a prohibited person at the time the defendant committed the instant offense, pursuant to USSG § 2K2.1(a)(4)(B).

   2. The parties agree and stipulate that the offense level is increased by 6 levels because between 25 and 99 firearms, specifically 30 firearms, were possessed, pursuant to USSG § 2K2.1(b)(1)(C).

   c.   The parties agree and stipulate that, as of the date of this agreement, the defendant has demonstrated acceptance of responsibility for his offense, making the defendant eligible for a 2-level downward adjustment under USSG § 3E1.1(a).

- 12 -

17.    In exchange for the promises made by the government in entering this plea agreement, the defendant voluntarily and expressly waives all rights to file any appeal, any collateral attack, or any other writ or motion that challenges the defendant's conviction, sentence, or any other matter relating to this prosecution, including any assessment, forfeiture, restitution, or the length or condition of supervised release, whether such an appeal, collateral attack, or other writ or motion arises under 18 U.S.C. § 3742, 28 U.S.C. § 1291, 28 U.S.C. § 2255, or any other provision of law. As part of this knowing and voluntary waiver of the right to challenge the conviction and sentence, the defendant expressly waives the right to raise on appeal or on collateral review any argument that (1) the statutes to which the defendant is pleading guilty are unconstitutional and (2) the admitted conduct does not fall within the scope of the statutes.

a.    Notwithstanding the waiver provision above, if the government appeals from the sentence, then the defendant may file a direct appeal of his sentence.

b.    If the government does not appeal, then notwithstanding the waiver provision set forth in this paragraph, the defendant may file a direct appeal or petition for collateral relief but may raise only a claim, if otherwise permitted by law in such a proceeding:

i.    that the defendant's sentence on any count of conviction exceeds the statutory maximum for that count as set forth in paragraph 7 above;

ii.    challenging a decision by the sentencing judge to impose an "upward variance" above the final Sentencing Guideline range determined by the Court; and

- 13 -

iii.     that an attorney who represented the defendant during the course of this criminal case provided constitutionally ineffective assistance of counsel.

If the defendant does appeal or seek collateral relief pursuant to this subparagraph (b), no issue may be presented by the defendant in such a proceeding other than those described in this subparagraph (b).

18.     The defendant acknowledges that pursuing an appeal or any collateral attack waived in the preceding paragraph may constitute a breach of this plea agreement. The government recognizes that the mere filing of a notice of appeal is not a breach of the plea agreement. The government may declare a breach only after the defendant or his counsel thereafter states, either orally or in writing, a determination to proceed with an appeal or collateral attack raising an issue the government deems barred by the waiver. The parties acknowledge that the pursuit of an appeal constitutes a breach only if a court determines that the appeal does not present an issue that a judge may reasonably conclude is permitted by an exception to the waiver stated in the preceding paragraph or constitutes a "miscarriage of justice" as that term is defined in applicable law.

19.     The defendant waives all rights, whether asserted directly or by a representative, to request or receive from any department or agency of the United States any records pertaining to the investigation or prosecution of this case, including without limitation any records that may be sought under the Freedom of Information Act, 5 U.S.C. § 552, or the Privacy Act, 5 U.S.C. § 552a.

20.     The defendant is satisfied with the legal representation provided by the defendant's lawyer; the defendant and this lawyer have fully discussed this plea agreement; and the defendant is agreeing to plead guilty because the defendant admits that he is guilty.

21.     The parties have also entered a supplemental agreement that is filed under seal. It is agreed that the parties' guilty plea agreement, along with the sealed supplement, presents the entire agreement of the parties with regard to the defendant's guilty plea and sentence. The parties agree that neither has made any additional promise, agreement, or understanding other than those set forth in this written guilty plea agreement and the sealed supplement, and that no additional promises, agreements, or understandings will be entered into unless in writing and signed by all parties.

DAVID METCALF
United States Attorney


FRED BLAKLEY
Defendant

/s/ Patrick J. Murray for
SALVATORE L. ASTOLFI
Chief, Criminal Division
Assistant United States Attorney


MEGAN DAVIES
Counsel for the Defendant

/s/ Ruth Mandelbaum
RUTH MANDELBAUM
Assistant United States Attorney
ALEXANDER B. BOWERMAN
Special Assistant United States Attorney

Date:   12/23/2025

Attachment A

## IN THE UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA          :

            v.          :          CRIMINAL NOS.    25-8-2 & 25-537

FRED BLAKLEY          :

## <u>ACKNOWLEDGMENT OF RIGHTS</u>

I hereby acknowledge that I have certain rights that I will be giving up by pleading guilty.

1.      I understand that I do not have to plead guilty.

2.      I may plead not guilty and insist upon a trial.

3.      At that trial, I understand

      a.      that I would have the right to be tried by a jury that would be selected from the Eastern District of Pennsylvania and that along with my attorney, I would have the right to participate in the selection of that jury;

      b.      that the jury could only convict me if all 12 jurors agreed that they were convinced of my guilt beyond a reasonable doubt;

      c.      that the government would have the burden of proving my guilt beyond a reasonable doubt and that I would not have to prove anything;

      d.      that I would be presumed innocent unless and until such time as the jury was convinced beyond a reasonable doubt that the government had proven that I was guilty;

      e.      that I would have the right to be represented by a lawyer at this trial and at any appeal following the trial, and that if I could not afford to hire a lawyer, the court would appoint one for me free of charge;

      f.      that through my lawyer I would have the right to confront and cross-examine the witnesses against me;

       g.     that I could testify in my own defense if I wanted to and I could subpoena witnesses to testify in my defense if I wanted to; and

       h.     that I would not have to testify or otherwise present any defense if I did not want to and that if I did not present any evidence, the jury could not hold that against me.

    4.     I understand that if I plead guilty, there will be no trial and I would be giving up all of the rights listed above.

    5.     I understand that if I decide to enter a plea of guilty, the judge will ask me questions under oath and that if I lie in answering those questions, I could be prosecuted for the crime of perjury, that is, for lying under oath.

    6.     I understand that if I plead guilty, I have given up my right to appeal, except as set forth in the appellate waiver provisions of my plea agreement.

    7.     Understanding that I have all these rights and that by pleading guilty I am giving them up, I still wish to plead guilty.

    8.     I acknowledge that no one has promised me what sentence the Court will impose. I am aware and have discussed with my attorney that, at sentencing, the Court will calculate the Sentencing Guidelines range, and then, in determining my sentence, will consider the Guideline range and all relevant policy statements in the Sentencing Guidelines, along with other sentencing factors set forth in 18 U.S.C. § 3553(a), including

    (1) the nature and circumstances of the offense and my personal history and characteristics;

    (2) the need for the sentence imposed: (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

    (3) the kinds of sentences available;

    (4) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(5) the need to provide restitution to any victims of the offense.


FRED BLAKLEY
Defendant


MEGAN DAVIES
Counsel for the Defendant


Dated: 12 / 23 / 2025

**ATTACHMENT B-1**

**Property to be Forfeited Pursuant to 18 U.S.C. §§ 981(a)(1)(C) and 982(a)(7)**

| Item # | Description |
|---|---|
| | The real property located at 3636 Bluegrass Drive, Lake Havasu City, Arizona 86406 |
| 1B185 | 3 coins; 1 one ounce gold bar; gold ring, seized from 3636 Bluegrass Drive, Lake Havasu City, Arizona, 86404 |
| 1B170 | US Currency $22,165 ($100x155; $20x321; $10x4; $5x6; $1x175), seized from 3636 Bluegrass Drive, Lake Havasu City, Arizona, 86404 |
| 1B162 | US Currency $2,575 ($100x14; $20x57; $10x1; $5x3; $1x10), seized from 3636 Bluegrass Drive, Lake Havasu City, Arizona, 86404 |
| GJ-1B6 | $1400 USD ($100 x 14) folded inside Living Well Health Club PMA forms, split from 1B3: White Box Containing Documents, from 1760 East Cottonwood Lane, Fort Mohave, Arizona, 86426 |
| GJ-1B5 | $100 USD found folded inside Living Well Health Club PMA order form, split from 1B4: White Box Containing Documents, from 1760 East Cottonwood Lane, Fort Mohave, Arizona, 86426 |
| 1B197 | iStyle Aplio XG Ultrasound Machine, seized from 3636 Bluegrass Drive, Lake Havasu City, Arizona, 86404 |
| 1B171 | EDAN Diagnostic Ultrasound System, Model: U50, seized from 3636 Bluegrass Drive, Lake Havasu City, Arizona, 86404 |
| 1B149 | Ultrasound Tech (Model E-60) Gray Suitcase SN (560348-M20809410008), seized from 1440 North McCulloch Boulevard, Suite 314-315, Lake Havasu City, Arizona, 86403, United States |
| 1B136 | Ultrasound Tech (EDAN) (560348-M21400140015), seized from 1440 North McCulloch Boulevard, Suite 314-315, Lake Havasu City, Arizona, 86403, United States |
| 1B138 | Ultrasound Tech (Sonosite) (2105308126), seized from 1440 North McCulloch Boulevard, Suite 314-315, Lake Havasu City, Arizona, 86403, United States |
| 1B142 | Ultrasound Tech Toshiba SN (30003027), seized from 1440 North McCulloch Boulevard, Suite 314-315, Lake Havasu City, Arizona, 86403, United States |
| 1B144 | Ultrasound Tech (Gray Suitcase) EDAN (Model U-50) SN (560181-M16B03660013), seized from 1440 North McCulloch Boulevard, Suite 314-315, Lake Havasu City, Arizona, 86403, United States |

**ATTACHMENT B-2**

**Property to be Forfeited Pursuant to 18 U.S.C. § 924(d)**

| Item # | Description |
|---|---|
| 1B100 | IWI, Galil Ace SAR, 7.62x39 caliber, serial G0003382, seized from 1760 E Cottonwood Lane, Mohave Valley, Arizona |
| 1B101 | Ruger, AR-556, 224 Valkyrie, serial 855-36710, seized from 1760 E Cottonwood Lane, Mohave Valley, Arizona |
| 1B102 | M43, 7.62x39 caliber, serial GM000171, seized from 1760 E Cottonwood Lane, Mohave Valley, Arizona |
| 1B105 | Aero Precision, EPC-9, 9mm, serial SF-066664, seized from 1760 E Cottonwood Lane, Mohave Valley, Arizona |
| 1B106 | Kel-Tec, Sub2000, 9mm, serial 24EAW15, seized from 1760 E Cottonwood Lane, Mohave Valley, Arizona |
| 1B107 | CZ Scorpion 3 plus, 9mm, serial ZS024782, seized from 1760 E Cottonwood Lane, Mohave Valley, Arizona |
| 1B108 | CMMG, MK10, 10mm, serial CAP09988, seized from 1760 E Cottonwood Lane, Mohave Valley, Arizona |
| 1B109 | FN, FN15, .556 caliber, serial FNCR019884, seized from 1760 E Cottonwood Lane, Mohave Valley, Arizona |
| 1B110 | Adam Arms, AASF308, .308 caliber, serialSFB0000142 with Kinetic RACKET762 suppressor, serial M306, seized from 1760 E Cottonwood Lane, Mohave Valley, Arizona |
| 1B111 | Sig Sauer, MCX, 7.62x39 caliber, serial 63J044233, seized from 1760 E Cottonwood Lane, Mohave Valley, Arizona |
| 1B114 | IWI, Galil Ace SAR, 7.62x51 caliber, serial G1000076, seized from 1760 E Cottonwood Lane, Mohave Valley, Arizona |
| 1B115 | Ruger, AR-556, .556 caliber, serial 1852-57008, seized from 1760 E Cottonwood Lane, Mohave Valley, Arizona |
| 1B117 | Typhoon, F-12.1, 12 Gauge, serial21-B-2810, seized from 1760 E Cottonwood Lane, Mohave Valley, Arizona |
| 1B118 | Smith & Wesson, M2.0, 10mm, serial DLS4302, seized from 1760 E Cottonwood Lane, Mohave Valley, Arizona |
| 1B119 | CAI, MK3, serial 19070, seized from 1760 E Cottonwood Lane, Mohave Valley, Arizona |
| 1B122 | Remington, Gamemaster 760, 30-06 caliber, serial 6924020, seized from 1760 E Cottonwood Lane, Mohave Valley, Arizona |
| 1B123 | JTS, 12 Gauge, serial MK2020504, seized from 1760 E Cottonwood Lane, Mohave Valley, Arizona |
| 1B124 | Remington 700, 30-06, serial A6333586, seized from 1760 E Cottonwood Lane, Mohave Valley, Arizona |
| 1B125 | Marlin 60, .22 caliber, serial 02145885, seized from 1760 E Cottonwood Lane, Mohave Valley, Arizona |

| Item # | Description |
|---|---|
| 1B130 | 44 boxes of ammunition, totaling 37,923 rounds, seized from 1760 E Cottonwood Lane, Mohave Valley, Arizona |
| 1B131 | 4 boxes of ammunition, totaling 829 rounds, seized from 1760 E Cottonwood Lane, Mohave Valley, Arizona |
| 1B132 | 23 boxes of ammunition, totaling 9,365 rounds, seized from 1760 E Cottonwood Lane, Mohave Valley, Arizona |
| 1B87 | M&M Inc, M10X, 7.62x39 caliber, serial M10715, seized from 1760 E Cottonwood Lane, Mohave Valley, Arizona |
| 1B88 | Smith & Wesson, MMP15-22, .22 caliber, serial LBM3018, seized from 1760 E Cottonwood Lane, Mohave Valley, Arizona |
| 1B89 | Ruger, AR-556, .556 caliber, serial 1802-57003, seized from 1760 E Cottonwood Lane, Mohave Valley, Arizona |
| 1B91 | Derya Arms, VR80, 12 Gauge, serial R465602, seized from 1760 E Cottonwood Lane, Mohave Valley, Arizona |
| 1B92 | Smith & Wesson, MMP15-22 , .22 long rifle, serial LBM3297, seized from 1760 E Cottonwood Lane, Mohave Valley, Arizona |
| 1B94 | Derya Arms, VRPA-40, 12 Gauge, serial R302941, seized from 1760 E Cottonwood Lane, Mohave Valley, Arizona |
| 1B95 | Rossi, RS22, .22 caliber, serial 7CA023034L, seized from 1760 E Cottonwood Lane, Mohave Valley, Arizona |
| 1B96 | Kel-Tec, CMR30, .22 caliber, serial YB708, seized from 1760 E Cottonwood Lane, Mohave Valley, Arizona |
| 1B98 | MOLOT OROZHIE, VEPR-12, 12 Gauge, serial 16VAP2585, seized from 1760 E Cottonwood Lane, Mohave Valley, Arizona |
| 1B99 | FOS TECH, Origin, multi-caliber, serial FT-0006118, seized from 1760 E Cottonwood Lane, Mohave Valley, Arizona |

**ATTACHMENT C-1**

**Property to be Abandoned**

| Item # | Description |
|---|---|
| 1B186 | Living Well Ministry money bag containing papers with suspected seed phrase and crypto currency wallet credentials, seized from 3636 Bluegrass Drive, Lake Havasu City, Arizona, 86404 |
| 1B213 | Living Well Membership PMA, seized from 3636 Bluegrass Drive, Lake Havasu City, Arizona, 86404 |
| 1B212 | Patient Records, seized from 3636 Bluegrass Drive, Lake Havasu City, Arizona, 86404 |
| 1B211 | SonicWaves Research Forms and Logs, seized from 3636 Bluegrass Drive, Lake Havasu City, Arizona, 86404 |
| 1B210 | (U) Black Accordion Folder Containing Financial Documents, seized from 3636 Bluegrass Drive, Lake Havasu City, Arizona, 86404 |
| 1B208 | Living Well Ministry Documents, seized from 3636 Bluegrass Drive, Lake Havasu City, Arizona, 86404 |
| 1B207 | Sonic Waves Research Documents, seized from 3636 Bluegrass Drive, Lake Havasu City, Arizona, 86404 |
| 1B205 | Living Well Documents, seized from 3636 Bluegrass Drive, Lake Havasu City, Arizona, 86404 |
| 1B200 | Living Well and Aetheion Documents, seized from 3636 Bluegrass Drive, Lake Havasu City, Arizona, 86404 |
| 1B199 | Bag of Syringes, seized from 3636 Bluegrass Drive, Lake Havasu City, Arizona, 86404 |
| 1B196 | Advertisement for Cancer, Heart, and Stroke Treatments, seized from 3636 Bluegrass Drive, Lake Havasu City, Arizona, 86404 |
| 1B194 | Health Screenings 4 Life Paperwork, seized from 3636 Bluegrass Drive, Lake Havasu City, Arizona, 86404 |
| 1B191 | Contracts and Living Well Ministry Paperwork, seized from 3636 Bluegrass Drive, Lake Havasu City, Arizona, 86404 |
| 1B190 | Living Well Ministry Paperwork to Include Scheduling Documents, seized from 3636 Bluegrass Drive, Lake Havasu City, Arizona, 86404 |
| 1B187 | Financial Documents, seized from 3636 Bluegrass Drive, Lake Havasu City, Arizona, 86404 |
| 1B184 | Sonic Wave Research Documentation, seized from 3636 Bluegrass Drive, Lake Havasu City, Arizona, 86404 |
| 1B183 | Sonic Wave Research Documentation, seized from 3636 Bluegrass Drive, Lake Havasu City, Arizona, 86404 |
| 1B182 | Medical Device Documentation, seized from 3636 Bluegrass Drive, Lake Havasu City, Arizona, 86404 |
| 1B180 | Documents Including Aetheion Information and Business License, seized from 3636 Bluegrass Drive, Lake Havasu City, Arizona, 86404 |

| Item # | Description |
|--------|-------------|
| 1B178 | PMA and Living Well Ministry Paperwork, seized from 3636 Bluegrass Drive, Lake Havasu City, Arizona, 86404 |
| 1B174 | Planner and Medical Documentation Including Aetheion ZC50 Cream, seized from 3636 Bluegrass Drive, Lake Havasu City, Arizona, 86404 |
| 1B173 | Folder Containing Diplomas and Certificates for Fred and Mary Blakley, seized from 3636 Bluegrass Drive, Lake Havasu City, Arizona, 86404 |
| 1B168 | Dark Colored Bottle Containing Unknown Liquid, seized from 3636 Bluegrass Drive, Lake Havasu City, Arizona, 86404 |
| 1B167 | Photo Album Containing Medical Indicia, seized from 3636 Bluegrass Drive, Lake Havasu City, Arizona, 86404 |
| 1B165 | Living Well Ministry Membership Applications, seized from 3636 Bluegrass Drive, Lake Havasu City, Arizona, 86404 |
| 1B161 | Photocopies of Photos and Business License, seized from 3636 Bluegrass Drive, Lake Havasu City, Arizona, 86404 |
| 1B158 | Legal Documents, seized from 3636 Bluegrass Drive, Lake Havasu City, Arizona, 86404 |
| 1B156 | "Private Membership Non-Disclosure Agreements," seized from 3636 Bluegrass Drive, Lake Havasu City, Arizona, 86404 |
| GJ-1B2 | Two Appointment Notebooks, from 5217 South Bison Ave ,Fort Mohave, Arizona, 86426 |
| GJ-1B4 | White Box Containing Documents, from 1760 East Cottonwood Lane, Fort Mohave, Arizona, 86426 |
| GJ-1B3 | White Box Containing Documents, from 1760 East Cottonwood Lane, Fort Mohave, Arizona, 86426 |
| 1B153 | Paperwork, seized from 1440 North McCulloch Boulevard, Suite 314-315, Lake Havasu City, Arizona, 86403, United States |
| 1B152 | American Institute Framed Photo, seized from 1440 North McCulloch Boulevard, Suite 314-315, Lake Havasu City, Arizona, 86403, United States |
| 1B151 | Framed Photo, seized from 1440 North McCulloch Boulevard, Suite 314-315, Lake Havasu City, Arizona, 86403, United States |
| 1B148 | Paperwork, seized from 1440 North McCulloch Boulevard, Suite 314-315, Lake Havasu City, Arizona, 86403, United States |
| 1B147 | Business Cards & Award, seized from 1440 North McCulloch Boulevard, Suite 314-315, Lake Havasu City, Arizona, 86403, United States |
| 1B146 | Black Folder w/ Paperwork & Other Paperwork, seized from 1440 North McCulloch Boulevard, Suite 314-315, Lake Havasu City, Arizona, 86403, United States |
| 1B145 | Framed Certificate, seized from 1440 North McCulloch Boulevard, Suite 314-315, Lake Havasu City, Arizona, 86403, United States |
| 1B143 | US Patent Paperwork, seized from 1440 North McCulloch Boulevard, Suite 314-315, Lake Havasu City, Arizona, 86403, United States |
| 1B141 | Miscellaneous Paperwork, seized from 1440 North McCulloch Boulevard, Suite 314-315, Lake Havasu City, Arizona, 86403, United States |

| Item # | Description |
|---|---|
| 1B140 | Stamp (red), seized from 1440 North McCulloch Boulevard, Suite 314-315, Lake Havasu City, Arizona, 86403, United States |
| 1B139 | Paperwork on stand, seized from 1440 North McCulloch Boulevard, Suite 314-315, Lake Havasu City, Arizona, 86403, United States |
| 1B137 | Paperwork on stand, seized from 1440 North McCulloch Boulevard, Suite 314-315, Lake Havasu City, Arizona, 86403, United States |
| 1B135 | Handwritten card, seized from 1440 North McCulloch Boulevard, Suite 314-315, Lake Havasu City, Arizona, 86403, United States |
| 1B134 | Gates University Paperwork, seized from 1440 North McCulloch Boulevard, Suite 314-315, Lake Havasu City, Arizona, 86403, United States |
| 1B133 | Paperwork on table, seized from 1440 North McCulloch Boulevard, Suite 314-315, Lake Havasu City, Arizona, 86403, United States |
| 1B155 | Samsung Cell Phone in black case, S/N:   RFCX119NT9L, IMEI1: 353690621627794, IMEI2: 354376941627792, seized from 3636 Bluegrass Drive, Lake Havasu City, Arizona, 86404 |
| 1B202 | Cricket Samsung Cell Phone, IMEI: 357644101803355 and Motorola Cricket Cell Phone, IMEI: 351840098732930, seized from 3636 Bluegrass Drive, Lake Havasu City, Arizona, 86404 |
| 1B163 | Samsung Cell Phone in pink case, S/N: RFCX119NT9L, IMEI1: 350256481940348, IMEI2: 352717371940340, seized from 3636 Bluegrass Drive, Lake Havasu City, Arizona, 86404 |
| 1B160 | Blue Samsung Cell Phone, IMEI1: 350256481964611, IMEI2: 352717371964613, seized from 3636 Bluegrass Drive, Lake Havasu City, Arizona, 86404 |
| 1B159 | iPhone with charger, seized from 3636 Bluegrass Drive, Lake Havasu City, Arizona, 86404 |
| 1B172 | Dell Computer Tower, S/N: GQ03XQ2, seized from 3636 Bluegrass Drive, Lake Havasu City, Arizona, 86404 |
| 1B201 | Lenovo Laptop, S/N: AB20337070, seized from 3636 Bluegrass Drive, Lake Havasu City, Arizona, 86404 |
| 1B193 | Dell Computer Tower, GQT4XQ2, seized from 3636 Bluegrass Drive, Lake Havasu City, Arizona, 86404 |
| 1B177 | Alien Computer Tower w/Cord, Service Tag: 5PVV0M3, seized from 3636 Bluegrass Drive, Lake Havasu City, Arizona, 86404 |
| 1B176 | HP Computer Tower w/Cord, S/N: 2MO3252XQ7, seized from 3636 Bluegrass Drive, Lake Havasu City, Arizona, 86404 |
| GJ-1B1 | Scheduling Phone from GJ Subpoena to Louis Denise Preston provided a blue cellphone and two appointment note books, from 5217 South Bison Ave , Fort Mohave, Arizona, 86426 |
| 1B169 | Samsung Tablet, S/N:  R9PT60YM9PE, IMEI:   354386279094507, seized from 3636 Bluegrass Drive, Lake Havasu City, Arizona, 86404 |
| 1B179 | Blue "UDS" USB, seized from 3636 Bluegrass Drive, Lake Havasu City, Arizona, 86404 |

| Item # | Description |
|--------|-------------|
| 1B198 | PNY 32GB USB, seized from 3636 Bluegrass Drive, Lake Havasu City, Arizona, 86404 |
| 1B175 | Lexar SS Card (64 GB) and Adapter, seized from 3636 Bluegrass Drive, Lake Havasu City, Arizona, 86404 |
| 1B188 | PNY 32GB USB, seized from 3636 Bluegrass Drive, Lake Havasu City, Arizona, 86404 |
| 1B218 | Two thumb drives and User Manual (U50, Diagnostic Ultrasound System, Version 2.3), seized from 3636 Bluegrass Drive, Lake Havasu City, Arizona, 86404 |
| 1B217 | Two thumb drives and User Manual (U60, Diagnostic Ultrasound System, Version 1.6), seized from 3636 Bluegrass Drive, Lake Havasu City, Arizona, 86404 |

## ATTACHMENT C-2

### Firearms and Ammunition to be Abandoned

| Item # | Description |
|---|---|
| 1B154 | 2 Boxes of "Fiocchi Ammunition," 357 Magnum CCLA (47 rounds), seized from 3636 Bluegrass Drive, Lake Havasu City, Arizona, 86404 |
| 1B103 | AR Variance Tan Rifle, .556 caliber, seized from 3636 Bluegrass Drive, Lake Havasu City, Arizona, 86404 |
| 1B104 | AR Variance Tan Rifle, .223 caliber, seized from 3636 Bluegrass Drive, Lake Havasu City, Arizona, 86404 |
| 1B112 | POF USA, P308, 7.62x39 caliber, serial BA1602106, seized from 3636 Bluegrass Drive, Lake Havasu City, Arizona, 86404 |
| 1B113 | POF USA, CMR, .308 caliber, serial UH2300533 with Kinetic RACKET762 suppressor, serial M307, seized from 3636 Bluegrass Drive, Lake Havasu City, Arizona, 86404 |
| 1B116 | POF USA, CMR, .308 caliber, serial UH-2200062, seized from 3636 Bluegrass Drive, Lake Havasu City, Arizona, 86404 |
| 1B120 | JMJ Tan Rifle, .308 caliber, seized from 3636 Bluegrass Drive, Lake Havasu City, Arizona, 86404 |
| 1B121 | AR Variance Tan Rifle, .308 Caliber, seized from 3636 Bluegrass Drive, Lake Havasu City, Arizona, 86404 |
| 1B126 | AR Lower Receiver (Black) , seized from 3636 Bluegrass Drive, Lake Havasu City, Arizona, 86404 |
| 1B127 | AR Lower Receiver (Tan) , seized from 3636 Bluegrass Drive, Lake Havasu City, Arizona, 86404 |
| 1B128 | 3 80% AR Lower Receivers (Tan), 1 80% AR Lower Receiver (Black), USPS White Package, seized from 3636 Bluegrass Drive, Lake Havasu City, Arizona, 86404 |
| 1B129 | P80 Gun Manufacturing Kit, seized from 3636 Bluegrass Drive, Lake Havasu City, Arizona, 86404 |
| 1B90 | AR Variance Black Rifle, seized from 3636 Bluegrass Drive, Lake Havasu City, Arizona, 86404 |
| 1B93 | DT10, Multi-caliber, serial DT10166599, seized from 3636 Bluegrass Drive, Lake Havasu City, Arizona, 86404 |
| 1B97 | POF USA, CMR, multi-caliber, serial 29H-2100953, seized from 3636 Bluegrass Drive, Lake Havasu City, Arizona, 86404 |